Craig POWELL, et al., Appellants,

v.

**TRANS GLOBAL TOURS, INC., Respondent.**

No. C7–98–2055.

Court of Appeals of Minnesota.

June 1, 1999.

James Utley, Arnold, Anderson & Dove, Minneapolis, for appellants.

Erik Andrew Lindseth, Rodney Gould, Faegre & Benson, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, SCHUMACHER, Judge, and HUSPENI, Judge.

## OPINION

HUSPENI, * Judge.

Appellants, Craig Powell, a tour participant injured by falling from a hotel balcony, and his wife, challenge the summary judgment granted to respondent, the tour

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

operator, and allege on appeal that the exculpatory clause in the respondent's contract did not relieve respondent from liability, that respondent was liable under the theories of agency, joint venture, or joint enterprise, and that respondent committed fraud by having appellant sign a statement that he had read and agreed to the terms in respondent's contract. Because there is no genuine issue of material fact precluding summary judgment, and because we see no error of law, we affirm.

## FACTS

Appellants Craig and Jane Powell arranged to travel to Mexico on a tour operated by respondent Trans Global Tours, Inc., a Minnesota corporation in the business of arranging charter air transportation, accommodations, and hotel-airport transfers at various locations in Mexico. Respondent's brochure listed a number of hotels; appellants selected Hotel La Ceiba. Respondent does not own, operate, manage, or control Hotel La Ceiba.

Two weeks prior to their trip, the Powells received various travel documents, including an Operator/Participant Contract. The contract provided:

> TG [Trans Global] is not responsible for personal injury, property damage or any other loss, claim or damage related to or arising out of, in whole or in part, the acts or omissions of any direct air carrier, hotel or other person not TG's direct employee or not under TG's exclusive control supplying any services or providing any goods offered or included.

At the airport, Craig Powell was asked to sign a statement saying: "I have read and do accept the tour terms and conditions of the Operator/Participant Contract." He did so. Hotel La Ceiba assigned appellants to a ground-floor room. The next day, they visited the second-floor room of friends whose accommodation had not been arranged by respondent. When

Craig Powell leaned on the balcony rail, it broke and he fell, injuring himself.

Appellants brought this action, alleging breach of contract, negligence, fraud, consumer fraud, equity, loss of consortium, and breach of United States federal regulations. Respondent moved for summary judgment, relying on the exculpatory clause in the contract and asserting that it was not responsible for the alleged negligence of a hotel over which it had no ownership or control. The district court granted respondent summary judgment on all of appellants' claims.

## ISSUES

1. Does the exculpatory clause release respondent from liability?

2. Is respondent liable for the hotel's alleged negligence under theories of agency, joint enterprise, or joint venture?

3. Did respondent commit consumer fraud or common law fraud by having appellant sign the statement that he had read and accepted the contract?

## ANALYSIS

### Standard of Review

On appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Appellants do not allege any genuine issues of material fact; they allege only erroneous application of the law. Where the material facts are not in dispute, a reviewing court need not defer to the district court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### 1. Enforceability of the disclaimer

Federal regulations governing tour operators preempt state law.[1] *See,*

1. However, we note that, contrary to appellants' argument, the exculpatory clause is not

*e.g., McDermott v. Travellers Air Servs.,* 462 F.Supp. 1335, 1341 (M.D.Pa.1978) (federal regulations represent "a declaration of public policy by the federal government which cannot be contravened by any state policy which allegedly prohibits exculpatory clauses from taking effect"). The exculpatory clause in respondent's contract was drawn up in accord with 14 C.F.R. § 380.32(x) (1998), providing that contracts between tour operators and participants

> may expressly provide that the charter operator, unless he is negligent, is not responsible for personal injury or property damage caused by any direct air carrier, hotel, or other supplier of services in connection with the charter.

Appellants argue that the exculpatory clause is void because Craig Powell did not sign the statement until after he had paid for the tour, in violation of 14 C.F.R. § 380.31(a) (1998), providing that:

> No money shall be accepted by a charter operator from a prospective participant unless the participant has agreed to the conditions of the charter by signing an operator-participant contract, as described in § 380.32.

While there appears to be no case directly on point, caselaw does reflect that exculpatory clauses drafted in accord with 14 C.F.R. § 380.32(x) are enforced even when the clause is not part of a signed contract or is on a document received after part of the price has been paid. *See, e.g., Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 388 (7th Cir.1989) (upheld clause found "in the advertising newsletter that [the tour operator] distributed to potential customers," no mention of contract or signature); *Connolly v. Samuelson,* 671 F.Supp. 1312, 1317 (D.Kan.1987) (upheld clause in brochure; no mention of contract or signature); *McDermott,* 462 F.Supp. at 1340–41 (upheld clause in brochure that

purchaser of trip did not read before he signed the booking form).

Appellants cite no authority for their view that a purchaser's failure to sign a statement that the purchaser has read and agrees to the contract prior to purchase voids the exculpatory clause.

## 2. Respondent's liability for the hotel's negligence

### A. Agency theory

█ Appellants argue that respondent, as principal, is liable for the negligence of its agent, the hotel. Appellants cite a sentence from 14 C.F.R. § 380.32(x): "[T]he charter operator is the principal and is responsible to the participants for all services and accommodations offered in connection with the charter." But the next sentence provides, "The contract may expressly provide that the charter operator, unless he is negligent, is not responsible for personal injury * * * caused by any * * * hotel, or other supplier of services in connection with the charter." The contract at issue here contained such a provision. The federal regulations do not establish a principal-agent relationship giving rise to liability between tour operators and hotels. *See also Wilson,* 874 F.2d at 389 ("A charter operator, as principal, employs independent contractors such as airlines and hotels * * *. * * * [A] principal generally cannot be held liable for the torts of an independent contractor * * * .").

### B. Joint enterprise and joint venture

█ Appellants argue that respondent and the hotel were engaged in a joint enterprise or joint venture. They cite *Walton v. Fujita Tourist Enters.,* 380 N.W.2d 198, 201–02 (Minn.App.1986), *re-*

---

unenforceable under Minnesota law. Appellants mistakenly rely on *Walton v. Fujita Tourist Enters.,* 380 N.W.2d 198, 201 (Minn.App. 1986) (holding an exculpatory clause unenforceable because it had not been bargained for, because the contract was for services

necessary, unique, and unavailable elsewhere, and because the clause was ambiguous), *review denied* (Minn. Mar. 21, 1986). Respondent's services were not necessary, unique, and unavailable elsewhere, and the clause was not ambiguous.

*view denied* (Minn. Mar. 21, 1986), for the two elements of joint enterprise: (1) mutual undertaking for a common purpose and (2) a right to some voice in the direction and control of the means used to carry out the common purpose, and for the four elements of joint venture: (1) contribution, i.e., the parties must combine money, property, time, or skill in some common undertaking; (2) joint proprietorship and control, i.e., a proprietary interest and right of mutual control over the subject matter of the property engaged in the venture; (3) sharing of profits by express or implied agreement; and (4) a contract, express or implied, showing that a joint venture was entered into.

 Appellants argue that respondent and the hotel worked together for a common purpose in that respondent listed the hotel in its brochure, made reservations at the hotel for tour participants, and staffed a desk at the hotel. But none of these facts indicates that the hotel had any control or direction of the means respondent used to arrange tours or that respondent had any control or direction of the means the hotel used to accommodate guests, and at least some level of joint control is required in the second element of both joint enterprise and joint venture. *See Wilson*, 874 F.2d at 392 (finding no basis to amend a complaint to allege joint venture because there was "no evidence that [the tour company] had anything near an equal right to direct the operations of the hotel").[2]

We conclude that respondent cannot be held liable for the hotel's negligence under agency, joint enterprise, or joint venture theories.

**3. Fraud and consumer fraud**

 Appellants accuse respondent of fraud and consumer fraud, specifically of fraudulent nondisclosure of the contents of the contract, because Craig Powell had not read the contract when respondent asked him to sign a statement that he had read and accepted its terms. There are four elements of fraudulent nondisclosure: a party conceals a fact material to a transaction, the fact is peculiarly within the concealing party's knowledge, the concealing party knows the other party will act on the presumption that no such fact exists, and the concealing party has a legal or equitable duty to communicate the fact. *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 365–66, 244 N.W.2d 648, 650 (1976). The issue here is not whether Powell had read the terms of the contract; the issue is whether respondent failed to disclose those terms. Appellants had received a copy of the contract two weeks earlier. Powell's failure to read it does not equate to fraudulent nondisclosure of its contents by respondent.

## DECISION

Respondent was entitled to summary judgment as a matter of law because its exculpatory clause protected it from liability and also because it had no liability for the hotel's alleged negligence under agency, joint enterprise, or joint venture theories and because it had committed no fraud.

**Affirmed.**

---

**2.** Nor was there any sharing of profits between respondent and the hotel, notwithstanding the hotel's contractual right to payment. *See Meyers v. Postal Fin. Co.*, 287 N.W.2d 614, 618 (Minn.1979) (holding that there was no joint venture and no sharing of profits between a buyers' club and a finance company even though the finance company "was to receive fixed payments from [the buyers' club] members on their contracts").